## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF KENTUCKY
### COVINGTON DIVISION

IN RE

**MICHELLE DOUGHERTY-KELSAY**                    **CASE NO. 18-20085**
                                                  **CHAPTER 13**
**DEBTOR**

### MEMORANDUM OPINION AND ORDER REGARDING
### DEBTOR'S STAY VIOLATION MOTION, ATTORNEYS' FEES,
### CONFIRMATION, AND CASE DISPOSITION

This matter is before the Court on Debtor's Motion for an Order Finding Creditor

Michael Stephen Kelsay in Violation of the Automatic Stay [ECF No. 26 ("Stay Violation

Motion")], Creditor's Objection thereto [ECF No. 35], and Debtor's Response [ECF No. 110].

Pursuant to § 362(k),[1] Debtor seeks a ruling that Creditor (Debtor's former husband) violated the

automatic stay when he participated in and failed to stop a pre-petition contempt action against

her in state family court from proceeding post-petition, among other things.  She requests actual

and punitive damages.  The parties filed joint stipulations of fact [ECF Nos. 131, 164, 180], and

the Court held an evidentiary hearing on March 12, 2019.  Confirmation of Debtor's Amended

Chapter 13 Plan [ECF Nos. 179, 183] and Debtor's Application to Allow Debtor's Attorneys'

Fees [ECF No. 168], which relates only to attorneys' fees incurred in connection with the Stay

Violation Motion, are also before the Court.  The following constitutes the Court's findings of

fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

**FINDINGS OF FACT**

A.    **The Family Court Action**

Debtor and Creditor were married in 2001 and have three children.  Their divorce

proceedings began in July 2007, and a Decree of Dissolution was entered on July 9, 2008.  For

the decade following, the parties continued to litigate domestic support and child custody issues,

and their divorce case remains pending in Kenton County (Ky.) Family Court ("Family Court"),

Case No. 14-CI-0769 ("Family Court Action").  For nine years (until 2017), Debtor received

domestic support from Creditor.

B.    **Mr. Kelsay Gets Custody, Seeks Child Support from Debtor, and Moves for a
      Finding of Contempt against Debtor for her Failure to Reimburse Child Support
      Expenses (Contempt Motion 1)**

Eventually, Creditor obtained primary custody of the children.  In May 2017, he filed a

Motion for Child Support and Motion for Contempt in the Family Court Action, which sought an

"[o]rder establishing a sum of child support to be paid by [Debtor] to [Creditor] for the parties'

three minor children."  [ECF No. 137-2 at 1.]  In August 2017, the Family Court issued an Order

("August 2017 Order") setting $617.60 as the amount of Debtor's monthly child support

obligation to Creditor and ordering that sum to be paid by wage assignment.  The August 2017

Order also directed that "[a]ny medical, dental, pharmaceutical and extracurricular activity costs

incurred on behalf of the children shall be paid 68% by [Creditor] and 32% by [Debtor]."  [ECF

No. 132, Joint Stipulations ("JS") at ¶ 9.]  That Order further required the parties to follow the

"30/30 rule" for reimbursement of said expenses, which the parties stipulated requires that "the

party incurring the expense must provide to the other an invoice for the expense; the recipient of

the invoice would then have 30 days to pay for, or 30 days to object to the expense."  [*Id.*]  The

Family Court "tabled" Creditor's requests for an order of contempt and for $750 of attorney's fees pending a further hearing scheduled for September 14, 2017.  [JS at ¶ 10.]

### C.     The September 2017 Hearing and Order

Attorney Shannon Tomlinson ("Tomlinson") assumed representation of Debtor in the Family Court Action on September 13, 2017.  During its scheduled hearing the next day, the Family Court made an oral ruling regarding the child support expenses Debtor owed Creditor in arrears.  The Family Court "ordered Creditor . . . to transmit to Debtor the child support related expenses within 24 hours of the hearing and ordered Debtor to either dispute or pay the expenses by October 6, 2017."  [JS at ¶ 12.]  This ruling, which was not set out in a contemporaneous written order, is hereinafter referred to as the "September 2017 Order."

### D.     Mr. Kelsay Files a Motion for Contempt Against Debtor for Violating the September 2017 Order (Contempt Motion 2)

Creditor filed another Motion for Contempt [ECF No. 137-3 ("Contempt Motion 2")] in the Family Court Action on October 31, 2017.  That Motion sought an "[o]rder requiring [Debtor] to show cause, if any, why she should not be in contempt for violating this Court's [September 2017 Order]."  [*Id*. at 1.]  It does not request any other specific relief, monetary or otherwise, and does not mention Debtor's incarceration as a possible remedy.  Its basis is that Creditor complied with the September 2017 Order by timely providing copies of invoices to Debtor's counsel, but Debtor failed to object to or reimburse Creditor for her portion of same by the court-ordered deadline.  An evidentiary hearing on Contempt Motion 2 was scheduled for February 19, 2018.

### E.     Debtor Files for Bankruptcy

Debtor filed this chapter 13 bankruptcy case on January 25, 2018.  Debtor's initial bankruptcy petition did not list Mr. Kelsay or his attorney.  It did list attorney Debra Pleatman

("Pleatman"), the Guardian Ad Litem assigned to the Family Court Action.  On February 13,

2018, Debtor amended her schedules to add Mr. Kelsay as a creditor and add his Family Court

counsel, Holly Daugherty ("Daugherty"), as an additional notice party.  The next day, Tomlinson

filed a "Suggestion of Bankruptcy" in the Family Court Action on Debtor's behalf.  As the

parties stipulated, this "alerted all parties to the proceedings of Debtor's bankruptcy case" and

cited the § 362(a) automatic stay protections.  [JS at ¶ 24.]  Pleatman emailed Debtor's

bankruptcy counsel, J. Christian A. Dennery ("Dennery"), that same day, asserting that her

guardian ad litem fees were considered domestic support obligations under the Bankruptcy Code

and copying Daugherty, Tomlinson, and Pleatman's bankruptcy counsel, Michael L. Baker.

Two days later, on February 16, 2018, Dennery emailed Pleatman, Daugherty, and

Tomlinson "that, in his opinion, the automatic stay 'stops the continuation of any proceeding to

collect pre-petition DSO from the Debtor or from the property of the estate, unless the creditor

first obtains relief from stay.'"  [JS at ¶ 25; *see also* ECF No. 137-7.]  Dennery cited case law

and sought feedback on his position from counsel.  Daugherty testified that she reviewed the

cited cases but neither responded to the email nor sought the advice of other bankruptcy counsel

regarding the matter.  Instead, Daugherty testified that she sought the Family Court's opinion

regarding the applicability of the automatic stay.

## F.    The Post-Petition Family Court Hearing (February 19, 2018) and Judgment

Creditor did not modify or withdraw Contempt Motion 2 after Debtor filed bankruptcy.

Instead, he testified that he moved forward with the hearing on Contempt Motion 2 based on his

counsel's advice that he was permitted to proceed.  As scheduled pre-petition, the Family Court

held the hearing on February 19, 2018.  Tomlinson objected to the hearing on Contempt Motion

2 on Debtor's behalf, asserting that Debtor was protected by the automatic stay.  Daugherty

4

responded on Creditor's behalf "by asserting something to the effect of: 'this is a domestic support obligation, and under the bankruptcy code, we can go forward. The automatic stay does not apply to the enforcement of domestic support orders.'" [JS at ¶ 26.] The Family Court held the hearing. The hearing also concerned Debtor's motion seeking to hold Creditor in contempt for various actions relating to the parties' co-parenting relationship, which Debtor filed pre-petition in September 2017.

Three days later, on February 22, 2018, the Family Court entered its Findings of Fact, Conclusions of Law, Judgment and Orders [ECF No. 137-9 ("Judgment")]. The Family Court ruled that "[t]he Suggestion of Bankruptcy filed by [Debtor] does not operate as a stay of the pending motions, which relate to domestic support obligations, pursuant to 11 U.S. Code 362 (b)." [Judgment at 3.] The Judgment addressed a variety of issues. First, Debtor's contempt motion was denied in its entirety. Second, the Judgment made multiple findings and rulings regarding the parties' visitation arrangement. Third, though the Family Court found Debtor to be in contempt of the September 2017 Order, it "reserve[d] on sanctioning [Debtor] for her contempt." [*Id.*] Instead, the Judgment focused in large part on child-support expenses that Debtor owed Creditor.

The Family Court found that Creditor complied with the September 2017 Order when Daugherty emailed Tomlinson a list of expenses totaling $692.80 that Debtor owed Creditor on September 15, 2017, but Debtor neither objected to same nor paid the expenses by the October 6, 2017 deadline. The Family Court also determined that Creditor incurred additional medical, dental, pharmaceutical, and extracurricular expenses on the children's behalf after September 15, 2017, and that Debtor's portion of these expenses amounted to $577.66. Accordingly, the Judgment granted Creditor a monetary judgment against Debtor for $1,270.66 which accrued

interest at the legal rate.[2]  The parties stipulated in this proceeding that all expenses included in the Judgment amount were incurred pre-petition.

The Judgment specified how the $1,270.66 was to be paid.  It required Debtor to deliver an initial $50 payment via check to the supervisor at her supervised visitation, who would deliver it to Creditor (hereinafter, the "$50 Award").  The remaining balance was to be paid in monthly installments via an amended child support wage garnishment order.  While Contempt Motion 2 did not expressly request payments on the pre-petition arrearage, Daugherty testified that "that's what the judge decided."  [Hr'g Audio, ECF No. 173, at 45:31.]

Daugherty further testified that Creditor did not seek guidance from the Family Court on the issue of collection of the $50 Award from non-estate property via a post-petition amended motion or otherwise, nor did he request that the $50 Award payment to the visitation supervisor be part of Debtor's wage garnishment.  Instead, as Daugherty put it, "the judge issues orders; we don't then argue; we just – we do what the court tells us to do."  [Hr'g Audio, ECF No. 173, at 44:09.]  While Daugherty was not aware whether family courts generally make *sua sponte* decisions about withholding in response to a motion for contempt, she testified that "this judge did it in this case."  [*Id.* at 49:24.]

Daugherty also testified about her knowledge of the Kentucky Cabinet for Health and Family Services' ("CHFS") tax refund intercepts to collect child support.  When asked generally whether an order of contempt could lead to a tax intercept, Daugherty explained that "it doesn't even have to be an order for contempt; they have records of if someone's behind – that flags the record, and then they do the intercept as part of the service of the child support office."  [Hr'g

---

[2] When combined, the two expense amounts total $1,270.46.  This Court assumes that the Judgment's use of $1,270.66 was inadvertent.

Audio, ECF No. 173, at 50:04.]  When asked whether she took steps to prevent an intercept in

this case, Daugherty stated that "wasn't on [her] radar" as she did not have any knowledge of

Debtor's potential tax refund.  [*Id.* at 50:27.]

On March 5, 2018, Dennery sent Daugherty a letter regarding the Judgment.  In the letter,

Dennery asserted that the automatic stay stops the continuation of proceedings to collect

pre-petition domestic support obligations.  Citing case law, Dennery opined that a creditor has an

affirmative duty to ensure that it discontinues collection activities after receiving notice of a

bankruptcy.  Dennery stated that he would be amending Debtor's chapter 13 plan to account for

"any amounts" owed to Creditor, who "will be paid through the plan."  [ECF No. 137-10 at 3.]

In the meantime, the letter notified Daugherty that Dennery advised Debtor "not to make any

payments to unsecured creditors, unless and until such claims have been allowed by the court or

payment of the claims are provided for under the chapter 13 plan."  [*Id.*]  Dennery "urge[d]

[Daugherty] and [Creditor] to exercise restraint by ceasing the continuation of any actions geared

toward collecting on the" Judgment.  [*Id.*]

Although she was no longer representing Debtor,[3] on March 7, 2018, Tomlinson emailed

Debtor to forward an invoice for guardian ad litem fees that Pleatman had sent Tomlinson that

morning.  In her email, Tomlinson stated:

> It would appear that both [Pleatman] and [Daugherty] are going to seek contempt
> and enforcement orders.  Judge Mehling made clear that he was not going to
> honor the bankruptcy proceeding as an excuse for non-payment.  This time you
> will go to jail.  I have not seen any order from the bankruptcy court that would
> stop the contempt process in your family court proceeding.  Probably motions will
> be filed by them today.  You need to make these payments or an order needs to be
> obtained from the bankruptcy court ASAP.

---

[3] Debtor testified that Tomlinson withdrew as her counsel in the Family Court Action in June or July 2018.  Darrell
Cox has represented Debtor in the Family Court Action since September 2018.

[ECF No. 137-12 at 1.]  Debtor testified that she took that email to mean that she "was going to jail."  [Hr'g Audio, ECF No. 174, at 1:19:20.]  To Debtor, the connection between contempt and jail was that if she was found guilty of contempt, she would go to jail, lose her job and be unemployable in the medical field, and not be able to see her children.  Debtor's testimony confirmed that her impression was based on Tomlinson's advice, but she also testified that the Family Court threatened to incarcerate her during a child support hearing in 2017 and during the February 2018 hearing, although she was unsure about the February hearing.  While Debtor had never been sentenced or incarcerated, she testified that when Tomlinson said that she had seen Family Court Judge Mehling put people in jail several times, she took it seriously.  In contrast to Debtor's statements, Daugherty testified that Judge Mehling did not threaten Debtor with incarceration at the February 2018 hearing.  Daugherty was unaware of any threats of incarceration made between that hearing and entry of the Judgment.

**G.    Other Post-Petition Actions Claimed to Violate the Automatic Stay**

**1.    Creditor Attempts to Collect the $50 Award**

Once on March 10 and again on March 11, 2018, Creditor contacted Debtor via text message to request that she make the initial $50 Award payment by bringing a check to her March 11 visitation.  Debtor did not do so.

On March 13, 2018, CHFS issued an amended Income Withholding for Support Order that increased the monthly amount deducted from Debtor's paycheck by $50.  Two days later, Creditor filed a third Motion for Contempt and Motion to Reduce Respondent's Parenting Time [ECF No. 137-15 ("Contempt Motion 3")] in the Family Court Action, which requested "a hearing to require [Debtor] to show cause why she should not be held in contempt for violating the Court's Orders," including the Judgment requiring Debtor "to deliver a check for $50 as first

8

payment in an envelope to the visitation supervisor at her supervised visitation time." [Contempt

Motion 3 at 1.] Contempt Motion 3 contends that Debtor "continues to refuse to pay her share of

co-payments for the children as previously ordered and confirmed at the February 19, 2018

hearing" and "continues to hide behind her bankruptcy attorney and claims her bankruptcy

attorney and/or her divorce attorney have advised her not to pay anything toward the children's

expenses." [*Id.* at 1-2.] Contempt Motion 3 also discusses various child custody and visitation

issues and requests that the Family Court order Debtor to pay $750 in attorney's fees that

Creditor incurred in filing it.

Dennery emailed a second letter to Daugherty on March 20, 2018, addressing Contempt

Motion 3 and Creditor's payment demands to Debtor. Dennery asserted that both actions "will

likely be construed as willful violations of the bankruptcy stay, pursuant to 11 USC §362(k),"

which "could result in liability, including actual damages, reasonable attorney fees, and punitive

damages." [ECF No. 137-16 at 5.] He stated that Debtor directed him to pursue an action

against Creditor for violations that had already occurred, but she was willing to find an out-of-

court resolution if Creditor withdrew Contempt Motion 3 by March 21, 2018. Daugherty

responded that she was out of town and would call Dennery upon her return.

Creditor did not withdraw Contempt Motion 3 by Debtor's March 21, 2018 deadline. On

March 22, 2018, Debtor filed "Debtor's Motion (A) to Shorten the Time to Respond to Debtor's

Motion for a Temporary Restraining Order; (B) for the Issuance of an Order Temporarily

Restraining Creditor Michael Steven Kelsay from Prosecuting his Motion for Contempt Against

Debtor; and (C) for an Order Finding Creditor [in] Violation of the Automatic Stay" [ECF No.

22] in this bankruptcy case. Debtor withdrew that Motion the next day and then filed the Stay

Violation Motion that is the subject of this Opinion on March 25, 2018.  On Daugherty's advice,

Creditor withdrew Contempt Motion 3 two days later on March 27, 2018.

### 2.    CHFS and U.S. Department of the Treasury Intercept Debtor's Tax Refunds

On March 26, 2018, CHFS notified Debtor that her $274 Kentucky state tax refund had

been transferred to the Department for Income Support/Child Support to be applied to her $4,417

child support arrearage.  The following day, March 27, 2018, the U.S. Department of the

Treasury notified Debtor that her federal tax refund of $4,306 had been applied to her child

support debt through CHFS.

On April 5, 2018, the Kenton County Child Support Department issued two payments to

Creditor in the amounts of $1,270.66 and $2,887.60 from Debtor's tax refunds.  Creditor filed

Proof of Claim No. 6 in Debtor's bankruptcy case for $1,270.66 that same day, and Debtor

objected to that claim several months later in October.  Creditor ultimately withdrew Claim

No. 6 in December 2018.  Debtor originally did not list her state or federal tax refunds as assets

on her Schedule A/B or claim an exemption in same.  She amended her Schedule A/B in October

2018 to add the following asset valued at $1,270.66:  "Portion of 2017 Tax Return witheld [*sic*]

by Creditor Steve Kelsay pursuant to post-petition state court order entered in violation of

automatic staty [*sic*]."  [ECF No. 80 at 5.]  She also amended Schedule C to claim an exemption

in that asset.  [*Id.* at 7.]  Debtor again amended Schedule C in January 2019 to remove that

claimed exemption, but she did not remove the asset from Schedule A/B.

### 3.    Creditor Attempts to Collect $112 Portion of Child Support Expense from Debtor

Creditor asserts that Debtor owes him post-petition domestic support obligations totaling

$1,046.37 through October 31, 2018, which remained unpaid as of March 11, 2019.  However,

the parties dispute whether $112 of that amount relating to a medical bill from St. Elizabeth

Healthcare is a pre- or post-petition debt.  They stipulated that the $112 was not part of the
$1,270.66 in pre-petition expenses awarded under the Judgment.

Pre-petition, the parties' son suffered an injury during a wrestling match on January 7,
2018, and Creditor took him to the emergency room.  That afternoon, Creditor notified Debtor of
the emergency room visit via two separate emails.  In the first, Creditor stated, "Please be
prepared to pay your portion of the co pay."  [ECF No. 137-6 at 2.]  In the second, just over an
hour later, Creditor stated, "ER copay is 350 so please be prepared to pay your part."  [*Id.* at 1.]
Creditor received an invoice for $350 from the hospital dated January 30, 2018, and on February
6, 2018, he emailed a copy of it to Debtor and requested that she pay her $112 portion.[4]

Creditor emailed Debtor at least seven times between February 6 and March 28, 2018,
post-petition, requesting that she pay her $112 portion.  In response to an email dated March 6,
2018, Debtor stated that Creditor and Daugherty "are both aware of my Chp 13 Bankruptcy."
[ECF No. 137-11 at 1.]  Creditor replied, "We are fully aware of your filing and the judge ruled
that taking care of your kids just [*sic*] covered."  [*Id.*]  Creditor testified that making multiple
demands is not his typical collection procedure.  He said that "once something gets this close to
hitting my credit again, that's when the action typically ramped up."  [Hr'g Audio, ECF No. 174,
at 17:34.]  In this instance, Creditor stated that he was acting on Daugherty's advice, on Judge
Mehling's directive that Creditor "make sure [he] stayed on top of these so that it didn't hit his
credit again," and an unspecified prior "order."  [*Id.* at 15:30.]

---

[4] Under the Family Court's August 2017 Order, Creditor owed 68% of the $350 ($238), and Debtor owed 32%
($112).

## H.    Damages and Mitigation

As actual damages, Debtor seeks the portion of her intercepted tax refunds that was paid to Creditor, $1,270.66, as well as the attorneys' fees she incurred because of Creditor's alleged stay violations.  Debtor also seeks punitive damages in such amount as the Court deems appropriate.  While Debtor originally sought emotional distress damages, she withdrew that request during the evidentiary hearing.

The parties stipulated to facts about their settlement negotiations regarding Debtor's Stay Violation Motion.  Notably, there is no evidence that Creditor attempted to address Debtor's stay violation issues until after the Stay Violation Motion was filed.  On April 3, 2018, Creditor offered to pay $1,000 in full settlement of the Motion, and Debtor declined.  Creditor offered $2,500 in full settlement on April 13, 2018 and withdrew that offer four days later.  Creditor's counsel emailed Debtor's counsel to inquire about the April 13 offer on April 23, 2018.  Debtor countered with a $15,000 settlement demand two days later, and Creditor declined on May 3, 2018.  Seven months later, in December 2018, Creditor offered $5,000 in full settlement.  The same day, Debtor declined and again countered with a $15,000 demand.

Debtor incurred attorneys' fees directly related to the filing and prosecution of the Stay Violation Motion.  In his purported Affidavit filed on January 3, 2019, as Debtor's Exhibit 27,[5] Dennery stated that his law firm (Dennery, PLLC) and Debtor entered into a contingency fee agreement related to the Stay Violation Motion, under which "any attorney fees for work related to the Debtor's motion would be paid on a contingency basis out of the proceeds of any awards."

---

[5] This Affidavit was the second of two affidavits that Debtor filed, and it purports to correct the prior incomplete affidavit filed at ECF No. 137-24.  Creditor objected to the admission of Exhibit 27 into evidence because it lacked a jurat by a notary, lacked a proper evidentiary foundation, and constituted inadmissible hearsay.  In the Order Admitting Exhibit [ECF No. 192] entered contemporaneously herewith, the Court overruled Creditor's objections and admitted Exhibit 27 into evidence.

12

[ECF No. 146 at ¶ 6.]  The day before the evidentiary hearing, Dennery filed a Fee Application

[ECF No. 168] on behalf of Dennery, PLLC, to which a billing statement was attached.  For the

period from February 16, 2018 through March 10, 2019, the Application states that the firm

seeks compensation of the greater of $16,743.75 or 40% of all amounts awarded to Debtor

pursuant to the Stay Violation Motion.  Debtor testified that she reviewed the Fee Application

and believed the hours billed by her two lawyers at Dennery, PLLC to be very reasonable.

Debtor's testimony painted a bleak picture of her financial status.  She currently works

two jobs, and her net pay is approximately $1,100 to $1,200 per month after approximately $617

is withdrawn for child support.  Debtor is required to pay $100 monthly to the Guardian Ad

Litem, $40 in weekly supervised visitation fees, and $75 for biweekly family therapy sessions.

In addition, she must pay her regular living expenses.  She testified that she filed bankruptcy to

save her home and car, not to avoid her domestic support obligations, yet she is unable to make

either her car or house payments.  She has surrendered her house, will surrender her car, and

anticipates moving in with her parents and taking the bus or driving a parent's vehicle.

Debtor testified that she expected that bankruptcy would allow her to "stretch out" her

$1,270.66 pre-petition domestic support obligation arrearage and pay it off through her chapter

13 plan.  [Hr'g Audio, ECF No. 174, at 1:12:14.]  Stated differently, Debtor expected "that the

pre-petition expenses would be rolled into [her] bankruptcy, and that her bankruptcy couldn't be

brought into the state court . . . and that . . . they [Creditor] would be getting their money . . .

through the payments that went to [her] bankruptcy plan."  [*Id.* at 1:24:20.]  Although Debtor

knew that she would be required to pay her post-petition domestic support obligations going

forward, she did not have a plan for paying them.  She mentioned pre-petition medical diagnoses

related to stress from her finances and family court matters in her testimony, but she did not

testify about or present evidence of any post-petition diagnosis.

Debtor testified that she owes Tomlinson $6,000 in fees for her representation in the

Family Court Action. Tomlinson continued to represent Debtor in that Action for a month or

two after the tax intercepts, but she ultimately withdrew due to non-payment. Debtor stated that

she intended to use the $1,270.66 intercepted from her tax refund to pay Tomlinson for "legal

fees so that I can fight in family court . . . to have a leg to stand on." [Hr'g Audio, ECF No. 175,

at 38:35.] Debtor was unrepresented in the Family Court Action from July to September 2018,

when Darrell Cox became her attorney. Although Debtor expressed dissatisfaction with Mr. Cox

in her testimony, she stated that he continues to represent her and will do so regardless of the

outcome of Debtor's Stay Violation Motion. She has an agreement to pay Mr. Cox "after

everything was said and done in the court." [Hr'g Audio, ECF No. 174, at 1:10:51.]

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter. 28 U.S.C. § 1334(b). Venue is proper in this

District. 28 U.S.C. §§ 1408 and 1409. This is a core proceeding, and the Court is authorized to

enter a final order adjudicating this matter. 28 U.S.C. § 157(b)(2)(A), (L), and (O).

"As a general rule, the filing of a bankruptcy petition operates to stay, among other

things, the continuation of a judicial proceeding against the debtor that was commenced before

the petition." *Dominic's Rest. of Dayton, Inc. v. Mantia*, 683 F.3d 757, 760 (6th Cir. 2012)

(citing 11 U.S.C. § 362(a)(1); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 901 n.5

(6th Cir. 2009)). "But the automatic stay protection does not apply in all cases; there are

statutory exemptions and there are non-statutory exceptions." *Id.* Thus, "[w]hen the automatic

stay is implicated two determinations are necessary: a) first, is the matter something which

14

would be stayed absent an exception to the stay; and b) if the matter would be stayed, does an

exception under § 362(b) or other applicable law apply?"  *Wohleber v. Skurko, et al. (In re*

*Wohleber)*, 596 B.R. 554, 567 (B.A.P. 6th Cir. 2019).  In the context of this § 362(k) action,

Debtor bears the burden of proving that Creditor violated the stay.  *Collett v. Lee Oil Co., Inc. (In*

*re Collett)*, No. 13-8033, 2014 WL 2111309, at *4 (B.A.P. 6th Cir. May 21, 2014) (citations

omitted).

If the stay applies to a creditor's action and the action does not fall within an exception,

the creditor has violated the stay.  "[A]ctions taken in violation of the stay are invalid and

voidable and shall be voided absent limited equitable circumstances."  *Easley v. Pettibone Mich.*

*Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).  The Sixth Circuit noted such limited circumstances

are present "only where the debtor unreasonably withholds notice of the stay and the creditor

would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is

attempting to use the stay unfairly as a shield to avoid an unfavorable result."  *Id*.  If a stay

violation was "willful," § 362(k) provides a remedy:  "an individual injured by any willful

violation of a stay provided by this section shall recover actual damages, including costs and

attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C.

§ 362(k)(1).

Debtor contends that the automatic stay applied, without exception, to Creditor's

post-petition actions to:  (a) move forward with the February 19, 2018 hearing on Contempt

Motion 2 and enforce the subsequent Judgment; (b) pursue collection of $112 from Debtor for

her portion of her son's hospital bill; and (c) file Contempt Motion 3 in the Family Court Action.

In opposition, Creditor argues that his actions either were not subject to the automatic stay or fell

15

within the stay exceptions pertaining to domestic support matters in § 362(b)(2)(A)(ii), (A)(iii),

(B), (C), and (F) (collectively, the "DSO Exceptions"), which provide:

> (b) The filing of a petition . . . does not operate as a stay--
> . . . .
>   (2) under subsection (a)—
>
>    (A) of the commencement or continuation of a civil action or proceeding--
>       . . .
>       (ii) for the establishment or modification of an order for domestic support
>          obligations;
>
>       (iii) concerning child custody or visitation;
>       . . .
>    (B) of the collection of a domestic support obligation from property that is not
>    property of the estate;
>
>    (C) with respect to the withholding of income that is property of the estate or
>    property of the debtor for payment of a domestic support obligation under a
>    judicial or administrative order or a statute;
>    . . .
>    (F) of the interception of a tax refund, as specified in sections 464 and
>    466(a)(3) of the Social Security Act or under an analogous State law . . . .

11 U.S.C. § 362(b).  The Court addresses each of Creditor's challenged actions in turn.

**I.    Holding the Contempt Hearing, Entry of the Judgment, and Post-Judgment Collection Efforts**

> **A.    The Family Court had jurisdiction to hold the February 19, 2018 hearing and enter the subsequent Judgment on any matter to which the automatic stay did not apply.**

The parties do not dispute that the February 19, 2018 hearing on Contempt Motion 2 in

the Family Court is a matter that would be stayed, absent an exception, as the "continuation . . .

of a judicial . . . proceeding against the debtor that was . . . commenced before the

commencement of the [bankruptcy] case . . . ."  11 U.S.C. § 362(a)(1).  The parties' initial

dispute is over whether the DSO Exceptions applied to give the Family Court jurisdiction to hold

the hearing on Contempt Motion 2 and, subsequently, to enter the Judgment.  Debtor contends

that the Family Court lacked jurisdiction to hold the hearing because the stay applied, without

exception, to preclude Contempt Motion 2 from proceeding, and this Court had not granted stay

relief.  As a result, Debtor argues that the Family Court's entry of the Judgment was void *ab*

*initio* because it violated the stay.  Creditor responds that the Family Court had jurisdiction to

hold the hearing and enter the Judgment because the matters at issue fell within the DSO

Exceptions.

　　　　The Sixth Circuit explained the concurrent jurisdiction relationship between bankruptcy

courts and other courts over matters subject to the automatic stay:

> Once a bankruptcy proceeding begins in one court, the concurrent jurisdiction of
> other courts is partially stripped.  In addition to exclusive jurisdiction over the
> bankruptcy proceeding itself, the district court in which a case under title 11 is
> commenced or is pending shall have exclusive jurisdiction of all of the property,
> wherever located, of the debtor as of the commencement of such case, and of
> property of the estate.  However, the exclusivity of the bankruptcy court's
> jurisdiction reaches only as far as the automatic stay provisions of 11 U.S.C.
> § 362.  That is, if the automatic stay applies to an action directed at the debtor or
> its property, jurisdiction is exclusive in the bankruptcy court.  If the automatic
> stay does not apply—e.g., if an exception to the stay covers the action in
> question—the bankruptcy court's jurisdiction is concurrent with that of any other
> court of competent jurisdiction.  And if the bankruptcy court grants relief from the
> stay with respect to certain property or claims . . . the bankruptcy court retains
> jurisdiction over those matters, although its jurisdiction is concurrent with that of
> other courts of competent jurisdiction.

*Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 383–84 (6th Cir. 2001) (internal citations and

quotation marks omitted).

　　　　In this case, the Family Court's jurisdiction to hold the February 19, 2018 hearing on

Contempt Motion 2 and to enter the Judgment turns on whether those matters fell within

exceptions to the automatic stay.  The Family Court expressly found that it could proceed

pursuant to the DSO Exceptions: "The Suggestion of Bankruptcy filed by [Debtor] does not

operate as a stay of the pending motions, which relate to domestic support obligations, pursuant

17

to 11 U.S. Code 362 (b)." [Judgment at 3.]  But the Family Court's conclusion, in and of itself, does not resolve this issue.  "[C]ourts have uniformly held that when a party seeks to commence or continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (i.e., stays) the proceedings." *Chao*, 270 F.3d at 384 (citation omitted).  "Assuming its jurisdiction is otherwise sound, the non-bankruptcy court may enter orders not inconsistent with the terms of the stay and any orders entered by the bankruptcy court respecting the stay." *Id.* (citation omitted).  However, "[i]f the non-bankruptcy court's initial jurisdictional determination is erroneous, the parties run the risk that the entire action later will be declared void *ab initio*." *Id.* (citations omitted).  "If a state court and the bankruptcy court reach differing conclusions as to whether the automatic stay bars maintenance of a suit in the non-bankruptcy forum, the bankruptcy forum's resolution has been held determinative, presumably pursuant to the Supremacy Clause." *Id.* (citation omitted).

Because Contempt Motion 2 was filed pre-petition, the filing of that Motion itself did not violate the automatic stay.  Rather, the occurrence of the hearing on Contempt Motion 2 and the resulting Judgment are at issue.  Although Creditor did not modify Contempt Motion 2 to narrow its scope to matters falling within the DSO Exceptions after Debtor filed bankruptcy, the testimony and Judgment reflect that the Family Court tailored the hearing and Judgment to conform to the DSO Exceptions.  As explained below, the hearing and Judgment fell within the § 362(b)(2) parameters with two exceptions.

**B.**    **The Family Court's establishment of Debtor's pre-petition child support arrearage in the Judgment did not violate the automatic stay.**

The Family Court granted Creditor a judgment against Debtor for $1,270.66 on account of unpaid, pre-petition child support expenses that the parties do not dispute are "domestic support obligations" as defined in § 101(14A).  Though entry of that Judgment was subject to the automatic stay under § 362(a)(1), Creditor argues that the § 362(b)(2)(A)(ii) stay exception permitted the Family Court to find that Debtor owed that amount and grant Creditor a judgment for same because doing so was part of the "establishment or modification of an order for domestic support obligations."  11 U.S.C. § 362(b)(2)(A)(ii).  This Court agrees.

Statutory interpretation "begin[s] with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'"  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 254 (1992)).  "Unless they are otherwise defined, the words in a statute 'will be interpreted as taking their ordinary, contemporary, common meaning.'"  *Deutsche Bank Nat. Tr. Co. v. Tucker*, 621 F.3d 460, 462 (6th Cir. 2010) (quoting *U.S. v. Plavcak*, 411 F.3d 655, 620 (6th Cir. 2005)).  "When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."  *Hartford*, 530 U.S. at 6 (citations and internal quotations omitted).

The Bankruptcy Code does not define the operative word "establishment" in § 362(b)(2)(A)(ii).  Those words are commonly used, and the brevity of that subsection does not lend itself to ambiguity.  Black's Law Dictionary defines "establish" as "[t]o settle, make, or fix firmly; to enact permanently," or "[t]o make or form; to bring about into existence," or "[t]o prove; to convince."  *Establish*, BLACK'S LAW DICTIONARY (10th ed. 2014).  Under these common meanings, this Court finds that the Family Court "established" Debtor's domestic

19

support obligation when it determined that Debtor owed Creditor $1,270.66 in unpaid child

support expenses under the prior September 2017 Order and granted Creditor a judgment for

same.  By doing so, the Family Court fixed (established) the amount that Debtor owed Creditor

and settled the parties' dispute over the amount of Debtor's domestic support obligation

arrearage.

It is well settled that "[e]xceptions to the stay should be read narrowly."  3 COLLIER ON

BANKRUPTCY ¶ 362.05 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019) (citation

omitted).  However, it would be an absurd result to read § 362(b)(2)(A)(ii) so narrowly that it

does not permit a family court to determine or "establish" the amount of a debtor's domestic

support obligation arrearage.  To hold otherwise would be to nullify that exception in all

situations where a parent/debtor is ordered to pay child support expenses within certain

categories, rather than to pay a set dollar amount, and a family court's categorization of

pre-petition, disputed expenses is needed while the debtor is in bankruptcy.  The Bankruptcy

Code defines "domestic support obligations" broadly to include debts that accrue "*before*, on, or

after the date of the order for relief."  11 U.S.C. § 101(14A) (emphasis added).  The plain

language of § 362(b)(2)(A)(ii) allows family courts to review pre-petition domestic support

obligation arrearages and establish the amount due post-petition, just as the Family Court did in

this case in the Judgment.

> **C.    The Family Court's ruling that a wage deduction order be entered did not
> violate the automatic stay; however, the Family Court's ruling that Debtor
> pay the $50 Award directly to the visitation supervisor violated the stay and
> is void.**

To satisfy the $1,270.66 Judgment amount, the Family Court ordered:  "An Amended

Child Support Order shall be entered to provide this amount be included in [Debtor's] wage

garnishment paid through the child support office.  [Debtor] shall deliver a check for $50.00 as

the first payment in an envelope to the visitation supervisor at her supervised visitation time."

[Judgment at 3.]  Absent an applicable exception, both rulings would violate the automatic stay

in § 362(a)(1).  One ruling fits squarely within a stay exception; the other does not.

Section 362(b)(2)(C) specifically excepts "withholding of income that is property of the

estate *or property of the debtor* for payment of a domestic support obligation under a judicial . . .

order" from the automatic stay.  11 U.S.C. § 362(b)(2)(C) (emphasis added).  Collection of a

domestic support obligation outside the wage withholding process, however, is stayed except

where it is "from property that *is not property of the estate*."  11 U.S.C. § 362(b)(2)(B)

(emphasis added).  Read together, the two exceptions make clear that the collection of a

domestic support obligation from property of a debtor's estate only may be accomplished

through a wage garnishment order; otherwise, it violates the automatic stay.

The Judgment's collection provisions do not distinguish between collection of the

$1,270.66 from property of the Debtor or property of her bankruptcy estate.  That does not

impact the Family Court's ruling regarding the amended wage garnishment order because it is

explicitly permitted by § 362(b)(2)(C), regardless of whether the garnished wages are Debtor's

property or her estate's.  For that reason, the Court finds that this portion of the Judgment did not

violate the automatic stay.  *See, e.g., In re Gellington*, 363 B.R. 497, 501 (Bankr. N.D. Tex.

2007) (recognizing that § 362(b)(2)(C) created a stay exception for "withholding of [a debtor's

income that is estate property] for payment of a domestic support obligation under a judicial or

administrative order or a statute"); *Peterson v. Peterson (In re Peterson)*, 410 B.R. 133, 136

(Bankr. D. Conn. 2009) (interpreting § 362(b)(2)(C) to permit a non-debtor spouse to seek a state

court order for domestic support obligations "with respect to the withholding of income" from debtor).[6]

In contrast, the Family Court's ruling that Debtor pay the $50 Award directly to the supervisor does not fall within the § 362(b)(2)(B) exception because the Judgment does not provide that the $50 Award shall be paid from non-estate property. For the § 362(b)(2)(B) exception to apply, the Family Court must have either made a finding that there were non-estate assets from which Debtor could make the $50 payment or ordered the payment to be made only from non-estate assets. *See, e.g., Gazzo v. Ruff, et al. (In re Gazzo)*, 505 B.R. 28, 42 (Bankr. D. Colo. 2014) (citing *In re Weiss*, 232 P.2d 789, 796 (Colo. 2010)) (holding that for § 362(b)(2)(B) to apply, the trial court must find that non-estate funds or assets exist from which debtor is to pay the domestic support obligation that the trial court is imposing). The Family Court did not do so. Therefore, the portion of the Judgment requiring Debtor's direct payment of the $50 Award violated the automatic stay and is void. *Easley*, 990 F.2d at 911.

### D.    Neither the interception of Debtor's tax refunds nor Creditor's retention of the funds violated the automatic stay.

Without Creditor's intervention, the U.S. Department of the Treasury and CHFS intercepted Debtor's respective federal and state tax refunds to apply those amounts to Debtor's child support arrearage. Creditor subsequently received payments of $1,270.66 and $2,887.60 from those intercepted funds, the former presumably because of the Judgment. Debtor challenges the interception of the $1,270.66 and Creditor's retention of that sum. She argues that

---

[6] *Gellington* and other cases examining whether the DSO Exceptions apply to a creditor's challenged action have done so in the context of a confirmed chapter 13 plan and found that the plan terms control a creditor's post-confirmation ability to collect, even where a stay exception otherwise permits collection. That is not the situation in this case, which has been pending for fourteen months without a confirmed plan.

the entire Judgment was void *ab initio* because it was entered in violation of the automatic stay

and that any acts stemming from entry of the Judgment are likewise void.

As discussed above, the Judgment's establishment of Debtor's $1,270.66 domestic

support obligation arrearage did not violate the stay.  Recognizing that tax refund intercepts are

common methods for collecting unpaid support, § 362(b)(2)(F) specifically excepts "the

interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act

or under an analogous State law," from the automatic stay.[7]  11 U.S.C. § 362(b)(2)(F).  Unlike

other stay exceptions, § 362(b)(2)(F) does not limit its applicability to non-estate property.  The

tax refund intercepts did not violate the stay.

Debtor contends that Creditor's failure to turn over the funds he received from the tax

intercepts to either the Chapter 13 Trustee or Debtor herself is a separate stay violation.  In

support, Debtor relies solely on the Sixth Circuit's statement that "[w]ithholding possession of

property of the bankruptcy estate constitutes 'the exercise [of] control over property of the estate'

for purposes of the automatic stay in 11 U.S.C. § 362(a)(3)."  *TranSouth Fin. Corp. v. Sharon (In

re Sharon)*, 234 B.R. 676, 682 (B.A.P. 6th Cir. 1999).  That statement is correct,[8] but it does not

end the inquiry.  Debtor's argument fails to address the second step of the *Wohleber* analysis:

whether Creditor's retention falls within a stay exception.  Even under a narrow construction, it

would be an absurd result to interpret the § 362(b)(2)(F) exception to allow interception of

Debtor's tax refund to collect her delinquent support but not allow the party to whom the support

is owed, Creditor, to retain the intercepted funds.  *See Good v. Tex. (In re Good)*, No. 08-40955,

---

[7] The cited portions of the Social Security Act, codified in 42 U.S.C. §§ 664 and 666, contemplate federal and state agencies' interception of refunds to collect support obligations.

[8] Although Debtor claimed an exemption in $1,270.66 of the intercepted funds in her October 2018 amendment to Schedule C, she amended Schedule C again in January 2019 to remove that exemption.  It is undisputed that Debtor's tax refunds were property of her estate at the time they were intercepted.

2013 WL 5230027, at *4 (Bankr. E.D. Tex. Sept. 17, 2013) (rejecting the argument that

§ 362(b)(2)(F) should be read so narrowly that it only allows interception of a refund when it is

not estate property).  Creditor's retention of the intercepted $1,270.66 did not violate the

automatic stay.

> ### E.    The Judgment's finding that Debtor was in contempt violates the automatic stay and is void.

The Judgment includes two references to Debtor's contempt.  The Family Court found

"that [Debtor] is in contempt of this court's order of September 14, 2017 and reserves on the

sanction for said contempt."  [Judgment at 1.]  The Family Court then ruled that it "reserves on

sanctioning [Debtor] for her contempt of court."  [*Id.* at 3.]  Both rulings were subject to the

§ 362(a)(1) automatic stay of the continuation of a judicial proceeding against Debtor that was

commenced prior to her bankruptcy case.  The Family Court apparently recognized that

limitation, but it determined that the hearing and subsequent Judgment were not stayed because

the matters at issue "relate to domestic support obligations, pursuant to 11 U.S. Code 362 (b)."

[*Id.*]

As discussed above, the Family Court was correct that many rulings in the Judgment

related to domestic support obligations and that various portions of § 362(b)(2) excepted them

from the automatic stay.  However, no stay exception permits a court to find a debtor in civil

contempt for non-payment of a pre-petition domestic support obligation or to issue contempt

sanctions to coerce a debtor into paying that debt.  A finding of contempt is not "the

establishment or modification of an order for domestic support obligations" under

§ 362(b)(2)(A)(ii), and, under the facts of this case, it does not relate to "the collection of a

domestic support obligation" from non-estate property under § 362(b)(2)(B).  Rather, it was an

effort to coerce Debtor into paying a pre-petition debt in violation of the automatic stay.

The Court draws a distinction between (i) holding a hearing on a pre-petition request to establish, modify, or otherwise order permissible domestic support obligation collections, even if cast as a civil contempt motion, and (ii) a ruling holding a debtor in contempt that yields the possibility of incarceration.  The former is permissible.  The latter violates the stay; there is no exception for the continuation of a judicial proceeding for incarceration or other impermissible collection activities as a result of a finding of civil contempt—even if it relates to a domestic support obligation exception.  It is in this regard that the exceptions to the automatic stay should be narrowly drawn.  *See, e.g.*, *Grinspan v. Grinspan, et al. (In re Grinspan)*, Adv. Pro. No. 14-8116, 2019 WL 522479, at *6-*12 (Bankr. E.D.N.Y. Feb. 8, 2019) (recognizing that creditors' post-petition prosecution of a state court contempt motion filed against debtor pre-petition violated the stay and did not fall within the § 362(b)(2)(B) exception, in which the word "collection" must be interpreted narrowly).[9]  Debtor testified about her stress and fear of being sent to jail as a result of the contempt finding.  And, notwithstanding that the Family Court withheld issuing sanctions for Debtor's adjudicated contempt, it was without authority to hold Debtor in contempt post-petition for a failure to pay pre-petition domestic support obligations.  Therefore, the Family Court's contempt findings violated the stay and are void.  *Easley*, 990 F.2d at 911.

## II.    Creditor's three actions to collect the $50 award in the judgment violated the automatic stay.

On three separate occasions, Creditor attempted to collect the $50 Award that the Family Court ordered Debtor to pay the visitation supervisor, which order is now void for reasons

---

[9] Some courts have construed "collection" in § 362(b)(2)(B) as including "enforcement."  *See, e.g., In re Angelo*, 480 B.R. 70, 90 (Bankr. D. Mass. 2012) ("hold[ing] that Congress understood 'collection' to include enforcement of a judgment by contempt and that, in § 362(b)(2)(B), Congress created an exception from the entirety of the stay to permit that to occur").  The Court is not persuaded that the analysis undertaken in *Angelo* applies to the facts of this case.

discussed above.  Once on March 10, 2018, and again on March 11, 2018, Creditor contacted

Debtor via text message to request that Debtor make the $50 payment during her March 11, 2018

visitation.  On March 15, 2018, Creditor filed Contempt Motion 3, requesting that the Family

Court "require [Debtor] to show cause why she should not be held in contempt for violating the

Court's Orders," including the Judgment's directive that Debtor pay $50 to the visitation

supervisor and a prior order that Debtor not have unsupervised visitation with the parties'

children.  [ECF No. 137-15 at 1.]  Contempt Motion 3 further requested that the Family Court

suspend Debtor's weekly visits with the children and relieve Creditor from an obligation to allow

Debtor to make up a missed visit, as well as order Debtor to pay the $750 of attorney's fees

Creditor incurred in filing that Motion.

Section 362(a)(6) imposes the automatic stay on "any act to collect . . . or recover a claim

against the debtor that arose before the commencement of the case under this title."  11 U.S.C.

§ 362(a)(6).  Creditor's March 10, 2018 text message to Debtor said, "Michelle, since we

couldn't do dinner Tuesday, please bring my check tomorrow to ur [*sic*] visit.  Thanks."  [ECF

No. 137-13.]  Creditor's March 11, 2018 message to her said, "Just a reminder to please bring a

check to your visitation today."  [*Id.*]  Creditor testified that those messages were sent regarding

Debtor's initial $50 Award payment under the Judgment.  Both messages seek impermissibly to

collect a pre-petition debt from Debtor.  Creditor offered no argument that those messages fell

within any stay exception.  Creditor violated the automatic stay by sending the two text

messages.

Sections 362(a)(1) and (6) both impose the stay on Creditor's filing of Contempt Motion

3, because doing so continued a judicial proceeding against Debtor that began before the

commencement of her bankruptcy case and was an act to collect a pre-petition debt.  While

26

§ 362(b)(2)(A)(iii) excepts Creditor's requests in Contempt Motion 3 regarding visitation from

the stay, no exception applies to Creditor's request that Debtor be held in contempt for her

failure to pay the $50 Award.  Contempt Motion 3 neither requested that the Family Court

"establish[ ] or modif[y] an order for domestic support obligations," nor sought collection

specifically from non-estate assets.  11 U.S.C. § 362(b)(2)(A)(ii), (b)(2)(B).  Creditor could have

tailored his requests to fit within the DSO Exceptions rather than asking the Family Court to hold

Debtor in contempt for noncompliance.  He did not do so.  The Court finds that Creditor's filing

of Contempt Motion 3 violated the automatic stay to the extent that it sought to hold Debtor in

contempt for failing to pay the $50 Award.

**III.    Creditor's actions to collect Debtor's $112 portion of their son's hospital bill did not violate the automatic stay.**

The parties dispute whether Debtor's obligation to pay $112 of their son's hospital bill is

a pre- or post-petition debt.  Debtor argues that it is a pre-petition debt because Creditor notified

her about it in emails sent pre-petition on January 6, 2018, and she filed bankruptcy on January

25, 2018.  She contends that Creditor's multiple emails to her regarding the $112 debt between

February 6 and March 28, 2018, violated the automatic stay as post-petition attempts to collect a

pre-petition debt.  In opposition, Creditor contends that the debt is a post-petition obligation

because Creditor sent Debtor the invoice for same on February 6, 2018, and his emails to Debtor

were not attempts to collect a pre-petition debt in violation of the stay.

The parties do not dispute that the "30/30" rule imposed by the Family Court dictates the

parties' respective obligations to pay this bill.  They stipulated that the 30/30 rule requires the

party incurring the expense to provide the other party an invoice for the expense, and "the

recipient of the invoice would then have 30 days to pay for, or 30 days to object to the expense."

[JS at ¶ 9.]  Applying the 30/30 rule, the Court finds that Debtor's obligation to pay the $112

portion of the bill accrued post-petition on February 6, 2018, when Creditor emailed her a copy

of the post-petition, January 30, 2018 invoice.  Creditor's emails in connection with the $112 bill

were not actions to collect a pre-petition debt within the meaning of § 362(a)(6).  In fact, as a

domestic support obligation which "first became payable" after the petition date, the debt was

required to be paid as a condition of confirmation.  11 U.S.C. § 1325(a)(8).

**IV.    Creditor's stay violations were "willful" under § 362(k)(1).**

As the individual seeking damages under § 362(k), Debtor bears "the burden of

establishing three elements by a preponderance of the evidence:  (1) the actions taken were in

violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual

damages."  *Collett v. Lee Oil Co., Inc. (In re Collett)*, No. 13-8033, 2014 WL 2111309, at *4

(B.A.P. 6th Cir. May 21, 2014) (citations omitted).  As discussed above, Creditor violated the

automatic stay in three instances:  by sending two text messages to collect the $50 Award and by

filing Contempt Motion 3, which requests that the Family Court hold Debtor in contempt for

failing to pay the $50 Award.

Debtor argues that the stay violations were "willful" within the meaning of § 362(k)(1).

As this Court recognized:

> A "willful violation" does not require proof of a specific intent to violate the stay.
> Rather, "[a] violation of the automatic stay can be willful when the creditor knew
> of the stay and violated the stay by an intentional act."  *TranSouth Financial
> Corp. v. Sharon (In re Sharon)*, 234 B.R. 676, 687 (B.A.P. 6th Cir. 1999)
> (citations omitted).  "Indeed, 'where the creditor received actual notice of the
> automatic stay, courts must presume that the violation was deliberate.'"  [*Grine v.
> Chambers (In re Grine)*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010)] (quoting
> *Fleet Mortg. Group, Inc. v. Kaneb (In re Kaneb)*, 196 F.3d 265, 269 (1st Cir.
> 1999)).  Conversely, even if it is questionable whether a creditor knew of a
> debtor's bankruptcy at the time of the alleged stay violation, if the creditor
> "thereafter acquire[s] actual knowledge of the debtor's] bankruptcy and fail[s] to
> take steps to undo and correct the . . . result," that constitutes willful conduct by
> the creditor.  *Bunch v. NCNB South Carolina (In re Bunch)*, 119 B.R. 77, 80
> (Bankr. D.S.C. 1990); *see also In re Pulliam*, 262 B.R. 539, 543 (Bankr. D. Kan.

2001) ("A creditor who has initiated collection efforts without knowledge of a bankruptcy petition has an affirmative duty to restore the status quo without the debtor having to seek relief from the Bankruptcy Court.") (citing *In re Miller*, 10 B.R. 778, 780 (Bankr. D. Md. 1981), *aff'd* 22 B.R. 479 (D. Md. 1982)).

*In re Witham*, 579 B.R. 787, 793 (Bankr. E.D. Ky. 2017).

There is no question that Creditor knew of the bankruptcy and the automatic stay at the time of each violation. Before Creditor took the three challenged actions, Creditor, through attorney Daugherty, had received numerous notices from Debtor's counsel that the Judgment's entry violated the stay and that attempts to enforce the Judgment would likewise be violations. Despite receiving these communications, Creditor did not seek stay relief or cease his collection efforts. In fact, Creditor failed to withdraw Contempt Motion 3 until *after* the Stay Violation Motion was filed.

Creditor cannot rely on the Family Court's rulings or the advice of his counsel regarding same to shield himself from liability for "willful" violations under § 362(k). As the Sixth Circuit explained in *Chao*, by not seeking stay relief from this Court before acting to collect pre-petition debts from Debtor, Creditor risked that the Family Court's Judgment could be voided. *Chao*, 270 F.3d at 384. Creditor knew that Debtor vehemently contended that the stay precluded Creditor's collection efforts, and he chose to pursue collection anyway via contempt threats over a $50 payment. The burden is on Creditor to breathe vitality into the automatic stay; otherwise, "[t]o place the onus on the debtor, . . . to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory." *Wohleber*, 596 B.R. at 572 (quoting *Ledford v. Tiedge (In re Sams)*, 106 B.R. 485, 490 (Bankr. S.D. Ohio 1989) (internal citation omitted)). The Court therefore finds that Creditor's actions to collect the $50 Award were willful stay violations.

29

This conclusion may cause creditors to wonder what options they have when a family court finds that the automatic stay does not apply to a proceeding or ruling.  The Sixth Circuit Bankruptcy Appellate Panel recently answered that question in *Wohleber*.  "Upon the filing of [a] bankruptcy, it [is] incumbent upon [creditors] to seek relief from the stay or to obtain a determination from the bankruptcy court that the stay [does] not apply."  *Wohleber*, 596 B.R. at 576.  Creditors "cannot sit idly by."  *Id.*  In this case, had Creditor timely sought a ruling regarding the impact of the automatic stay from this Court, he could have avoided being subject to a § 362(k) action.

## V.    Damages

Debtor seeks actual damages, attorneys' fees, and punitive damages from Creditor pursuant to § 362(k)(1).[10]  "Once a court determines that a party has willfully violated the automatic stay, the court is required by § 362(k)(1) to impose sanctions in an amount equal to the [d]ebtor's actual damages."  *In re Webb*, 472 B.R. 665 (unpublished table decision), *available at* 2012 WL 2329051, at *17 (B.A.P. 6th Cir. Apr. 9, 2012).  Debtor bears the burden of proving by a preponderance of the evidence that her "damages were 'proximately caused by and reasonably incurred as a result of the violation of the automatic stay.'"  *In re Baer*, No. 11-8062, 2012 WL 2368698, at *10 (B.A.P. 6th Cir. June 22, 2012) (quoting *Grine v. Chambers (In re Grine)*, 439 B.R. 461, 471 (Bankr. N.D. Ohio 2010)).  She "must be able to demonstrate the amount of damages incurred with a reasonable degree of certainty and must support this claim with evidence."  *Id.* (citing, *inter alia*, *In re Perrin*, 361 B.R. 853 (B.A.P. 6th Cir. 2007)).

Debtor seeks actual damages of $1,270.66, the amount of her intercepted tax refunds.  As discussed above, the Family Court's entry of that portion of the Judgment did not violate the stay

---

[10] During the evidentiary hearing, Debtor withdrew her original request for emotional distress damages.

because it fell within the § 362(b)(2)(A)(ii) exception, and § 362(b)(2)(F) specifically excepted

the interception of Debtor's tax refund to collect unpaid support from stay.  Debtor's request for

damages in the amount of the tax intercept is denied.

Debtor also seeks an award of attorneys' fees totaling either $16,743.75 or 40% of any

actual damage award to Debtor, whichever is greater, as actual damages.  This Court has

previously examined the standard for awarding attorney's fees as damages under § 362(k)(1):

> Section 362(k)(1) does not specify a standard by which attorney's fees and costs
> are to be evaluated, but it is generally accepted that "fees must be reasonable" and
> "should bear a reasonable relationship to the amount in controversy."  *In re
> Russell*, 441 B.R. 859, 863 (Bankr. N.D. Ohio 2010) (citations omitted).  "Those
> fees can include fees incurred out of court, as when a debtor retains an attorney to
> call or write a creditor to demand that it end its actions violating the stay."
> *Springer v. RNBJ RTO LLC (In re Springer)*, No. 16-3007, 2017 WL 3575859, at
> *5 (Bankr. W.D. Ky. Aug. 16, 2017).  "If those efforts fail, a debtor can also incur
> attorney's fees in court by pursuing an action to end a stay violation and to
> recover damages."  *Id.* (citing *In re Schwartz–Tallard*, 803 F.3d 1095, 1099 (9th
> Cir. 2015)).

*Witham*, 579 B.R. at 794.

Creditor bore the burden to stop collection proceedings once Debtor's bankruptcy was

filed.  *Wohleber*, 596 B.R. at 576.  That said, this Court has previously ruled in the stay violation

context that "[d]ebtors must be mindful of their duty to mitigate their damages because 'claims

for fees incurred in the prosecution of an unnecessary motions [sic] are not recoverable.'"

*Witham*, 579 B.R. at 794 (quoting *Springer*, 2017 WL 3575859, at *3 (internal citation omitted));

*see also Clay v. Credit Acceptance Corp. (In re Clay)*, No. 10-53848, 2011 WL 2312334, at *2

(Bankr. E.D. Ky. June 10, 2011) ("A substantial award of damages in the form of attorney fees

and costs is not proper where a debtor makes no effort to resolve the matter before filing the

complaint.") (citing *In re Newell*, 117 B.R. 323, 326 (Bankr. S.D. Ohio 1990).  In assessing

Case 18-20085-tnw    Doc 193    Filed 04/23/19    Entered 04/23/19 15:08:36    Desc Main
Document      Page 32 of 34

damages, the Court must therefore balance Creditor's burden described in *Wohleber* against

Debtor's duty to mitigate.

The damage claim is elusive in this case.  From the outset, Creditor was fanatically

focused on badgering Debtor for $50.  On the other hand, Debtor litigated her Stay Violation

Motion over the $50 (and arguably the $1,270.66) at great expense in terms of legal fees, but

more significantly at great expense to her fresh start.  As found above, Debtor has insufficient

income to meet her minimal living expenses and child support obligations.  She has lost her

home, is living with her parents, and is about to lose her car.  Her chapter 13 plan(s) have not

been confirmable at any time during the past fourteen months in part because of feasibility, but,

more clearly, because she has not paid her post-petition domestic support obligations as required

by § 1325(a)(8), including $1,330 of post-petition Guardian Ad Litem fees that Pleatman asserts

were owed as of January 7, 2019.[11]  Debtor states that she is in a chapter 13 proceeding to

address her domestic support obligations because she fears going to jail, losing her job, and

losing the ability to see her children.  Debtor was visibly under great duress at the evidentiary

hearing, yet her claim for emotional distress was inexplicably withdrawn at that hearing.

The finding of contempt and the $50 Award violating the stay were entered in February

2018.  Creditor engaged in collection efforts violating the stay until after Debtor filed her Stay

Violation Motion the next month.  There were no further violative actions by Creditor after

Contempt Motion 3 was withdrawn.  Debtor's attorneys' fees incurred to that point were

$4,313.75, an amount the Court finds reasonable.  Within two weeks, Creditor offered $2,500 to

---

[11] Debtor and Pleatman stipulated that, "[a]s of January 7, 2019, Creditor Pleatman asserts that the Debtor owes $1,330.00 in post petition domestic support obligations."  [ECF No. 164.]  They further stipulated to their agreement that Debtor had not paid anything toward that balance as of the March 11, 2019 stipulation date.

resolve the matter.  Debtor countered at $15,000 and never moved from that demand.  Instead,

Debtor continued to litigate, increasing her legal fees to more than $16,000.

      Any award for attorney's fees must be proportional to the damages claimed.  *Russell*, 441

B.R. at 863.  Debtor did not reasonably attempt to mitigate her damages after Creditor ceased his

stay violation conduct.  The maximum amount in controversy was less than $1,325 when the

Stay Violation Motion was filed.  Debtor's claimed attorneys' fees are more than 1100% higher

than her claimed actual damages.  An award of attorneys' fees that so greatly exceeds the amount

in controversy would be "far outside the bounds of reasonableness."  *Clay*, 2011 WL 2312334, at

*2 (finding that an award of attorney's fees almost 100% greater than the amount in controversy

was not reasonable).  The Court will award Debtor $4,313.75 in attorneys' fees.

      Debtor also seeks an award of punitive damages in such amount as the Court deems

appropriate.  "In addition to actual damages, a court has the discretion to award punitive

damages under § 362(k)(1) if it determines that a creditor willfully violated the automatic stay."

*Witham*, 579 B.R. at 795.  As the party seeking punitive damages, Debtor bears the burden of

demonstrating that Creditor's "conduct was 'egregious, vindictive, or intentionally malicious.'"

*Baer*, 2012 WL 2368698, at *10 (quoting *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio

2004)).  "[A] high level of culpable intent is not necessarily a pre-requisite to an award of

punitive damages."  *Henderson v. Auto Barn Atlanta, Inc., et al. (In re Henderson)*, No. 09-5114,

2011 WL 1838777, at *8 (Bankr. E.D. Ky. May 13, 2011) (citing *Bivens*, 324 B.R. at 42).

      Creditor's action to pursue $50 in the face of Debtor's bankruptcy and Debtor's counsel's

vehement opposition, particularly by seeking contempt, and Creditor's failure to cease his

unlawful conduct until after the Stay Violation Motion was filed, both support a finding of

egregious, vindictive, or malicious conduct.  The Court will exercise its discretion and award

Debtor $1,000 in punitive damages.

### <u>CONCLUSION</u>

Based on the foregoing, IT IS ORDERED as follows:

1.  The Stay Violation Motion [ECF No. 26] is granted in part.  Debtor is awarded

    attorneys' fees as actual damages in the amount of $4,313.75 and punitive damages in

    the amount of $1,000.00.

2.  Confirmation of Debtor's Amended Chapter 13 Plan [ECF No. 183] is DENIED, and

    Debtor shall have fourteen days from the entry of this Opinion within which to

    convert this case to a chapter 7 proceeding or the case will be dismissed without

    further notice or hearing.  [ECF No. 179.]

3.  The Application to Allow Debtor's Attorneys' Fees [ECF No. 168] is DENIED as

    moot pursuant to the Court's award of actual damages in paragraph 1 hereof.

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
***Tracey N. Wise***
**Bankruptcy Judge**
**Dated: Tuesday, April 23, 2019**
**(tnw)**